UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELISSA MOSHER, | ) |
| | ) No. CV-10-182-JPH |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on October 7, 2011[1] (ECF No. 15, 23). Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Kathryn A. Miller represents the Commissioner of Social Security (Commissioner). The parties have consented to proceed before a magistrate judge (ECF No. 7). On May 16, 2011, plaintiff filed a reply (ECF No. 25). After reviewing the administrative record and the briefs filed by the parties, the court **grants** Defendant's Motion for Summary Judgment (**ECF No. 23**) and **denies** Plaintiff's Motion for Summary Judgment (**ECF No. 15**).

**JURISDICTION**

Plaintiff protectively applied for disability insurance benefits (DIB) and supplemental security income on July 25, 2008,

---

[1] Because the briefing is complete the Court considers the case before the hearing date.

alleging disability as of May 12, 2005, due to mental impairments
(Tr. 98-99, 102-111, 119, 123). The applications were denied
initially and on reconsideration (Tr. 61-64, 67-68, 69-70).

At a hearing before Administrative Law Judge (ALJ) Moira
Ausems on October 21, 2009, plaintiff, represented by counsel, and
a vocational expert testified (Tr. 31-56). On March 5, 2010, the
ALJ issued an unfavorable decision (Tr. 13-24). The Appeals
Council denied Ms. Mosher's request for review on May 21, 2010
(Tr. 1-3). Therefore, the ALJ's decision became the final decision
of the Commissioner, which is appealable to the district court
pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for
judicial review pursuant to 42 U.S.C. § 405(g) on June 7, 2010
(ECF No. 1, 4).

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing
transcript, the ALJ's decision, the briefs of both plaintiff and
the Commissioner, and are briefly summarized here.

Plaintiff was 25 years old at onset (Tr. 98). She completed
the eighth grade and earned a GED (Tr. 33, 171, 241). She has
worked as a housekeeper, fast food worker, kitchen helper, and
telephone solicitor (Tr. 34-38, 51-52). Plaintiff asserts she is
unable to work due to PTSD, a personality disorder, depression,
anxiety, and audio hallucinations. Ms. Mosher testified she sees a
counselor once a month and a doctor for medication management once
every three months. Activities include cooking, cleaning, laundry,
driving, shopping, and caring for two children, age 2 and 13 at
the time of the hearing (Tr. 34, 39-44, 48, 123, 130, 132-134).
She experiences anxiety when around crowds, shops with her mother

1 or partner, and goes to appointments alone (Tr. 46-47, 49-50).

2                  **SEQUENTIAL EVALUATION PROCESS**

3       The Social Security Act (the Act) defines disability as the
4 as the "inability to engage in any substantial gainful activity by
5 reason of any medically determinable physical or mental impairment
6 which can be expected to result in death or which has lasted or
7 can be expected to last for a continuous period of not less than
8 twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act
9 also provides that a Plaintiff shall be determined to be under a
10 disability only if any impairments are of such severity that a
11 plaintiff is not only unable to do previous work but cannot,
12 considering plaintiff's age, education and work experiences,
13 engage in any other substantial gainful work which exists in the
14 national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
15 Thus, the definition of disability consists of both medical and
16 vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156
17 (9th Cir. 2001).

18       The Commissioner has established a five-step sequential
19 evaluation process for determining whether a person is disabled.
20 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person
21 is engaged in substantial gainful activities. If so, benefits are
22 denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not,
23 the decision maker proceeds to step two, which determines whether
24 plaintiff has a medically severe impairment or combination of
25 impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

26       If plaintiff does not have a severe impairment or combination
27 of impairments, the disability claim is denied. If the impairment
28 is severe, the evaluation proceeds to the third step, which

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                          - 3 -

compares plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity. 20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1. If the impairment meets or equals one of the listed
impairments, plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents plaintiff from
performing work which was performed in the past. If a plaintiff is
able to perform previous work, that Plaintiff is deemed not
disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At
this step, plaintiff's residual functional capacity (RFC)
assessment is considered. If plaintiff cannot perform this work,
the fifth and final step in the process determines whether
plaintiff is able to perform other work in the national economy in
view of plaintiff's residual functional capacity, age, education
and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

    The initial burden of proof rests upon plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is
met once plaintiff establishes that a physical or mental
impairment prevents the performance of previous work. The burden
then shifts, at step five, to the Commissioner to show that (1)
plaintiff can perform other substantial gainful activity and (2) a
"significant number of jobs exist in the national economy" which

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                           - 4 -

1 plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
2 Cir. 1984).

3                        **STANDARD OF REVIEW**

4        Congress has provided a limited scope of judicial review of a
5 Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold
6 the Commissioner's decision, made through an ALJ, when the
7 determination is not based on legal error and is supported by
8 substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th
9 Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
10 "The [Commissioner's] determination that a plaintiff is not
11 disabled will be upheld if the findings of fact are supported by
12 substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th
13 Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is
14 more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112,
15 1119 n. 10 (9th Cir. 1975), but less than a preponderance.
16 *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
17 *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
18 573, 576 (9th Cir. 1988). Substantial evidence "means such
19 evidence as a reasonable mind might accept as adequate to support
20 a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
21 (citations omitted). "[S]uch inferences and conclusions as the
22 [Commissioner] may reasonably draw from the evidence" will also be
23 upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On
24 review, the Court considers the record as a whole, not just the
25 evidence supporting the decision of the Commissioner. *Weetman v.
26 Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)(*quoting Kornock v.
27 Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

28        It is the role of the trier of fact, not this Court, to

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 5 -

resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found Ms. Mosher met the DIB requirements and was insured through June 30, 2009 (Tr. 13, 15). At step one ALJ Ausems found plaintiff did not engage in substantial gainful activity after onset (Tr. 15). At steps two and three, she found plaintiff suffers from major depressive disorder with alleged dissociative features; generalized anxiety disorder; posttraumatic stress disorder (PTSD), and avoidant personality disorder with depressive, paranoid and borderline traits, impairments that are severe but do not meet or medically equal a Listed impairment (Tr. 15-16). The ALJ found plaintiff less than completely credible (Tr. 19). At step four, relying on the VE, she found plaintiff is able to perform past relevant work (Tr. 23). Accordingly, the ALJ found plaintiff has not been disabled as defined by the Social Security Act at any time from onset through March 5, 2010, the date of the

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 6 -

decision (Tr. 24).

**ISSUES**

Plaintiff contends the ALJ erred when she assessed the evidence (ECF No. 16 at 8-18). The Commissioner responds that because the ALJ's decision is supported by substantial evidence and free of legal error, the Court should affirm (ECF No. 24 at 6-8).

**DISCUSSION**

Plaintiff contends the ALJ erred when she weighed the evidence, especially when she discounted the opinion of her treating counselor (ECF No. 16 at 8). The Commissioner asserts the ALJ's reasons for discounting the counselor's contradicted opinion are specific, legitimate and supported by substantial evidence. He asks the Court to affirm (ECF No. 24 at 17).

*Treating and examining professionals*

Plaintiff contends the ALJ failed to properly credit the opinions of treating professionals at Spokane Mental Health and Family Services of Spokane (ECF No. 16 at 9-10, 13-17), and of an examining psychologist.

**A. Treating professionals**

Plaintiff saw Michael Dobler, MSW, at Family Service of Spokane about twice a week from May 2005 until April 2009 (Tr. 173-229, 245-271, 390-397, 409-414, 417-423), and monthly from May through July 2009 (Tr. 415-416, 424). Ms. Mosher reported she attempted suicide in March 2005 by driving her car into a median. In May 2005 she "thought of taking all her brother's ADHD and sleeping" medications (Tr. 238). Mr. Dobler opined plaintiff's GAF

was 20.[2] From September-November 2005, he opined it was 30.[3] From March-May 2006, he opined her GAF was 35.[4] In November 2006, 50,[5] and, in November 2007, Mr. Dobler opined plaintiff's GAF was 50 (Tr. 245, 251, 256, 258, 261-262, 264).

Mr. Dobler notes plaintiff at times reports dissociating and having "alters," or other personalities[6]. Some of the records

---

[2]A GAF of 20 indicates some danger of hurting self or others(e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) or occasionally fails to maintain minimal personal hygiene (e.g., smears feces) or gross impairment in communication (e.g., largely incoherent or mute).

[3]A GAF of 30 indicates behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home or friends).

[4]A GAF of 35 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up other children, is defiant at home, and is failing at school).

[5]A GAF of 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

[6]The ALJ found plaintiff suffers from major depressive disorder with alleged dissociative features (Tr. 15). Dissociative identity disorder (DID), formerly multiple personality disorder, is characterized by the presence of two or more distinct identities or personality states that recurrently take control of the individual's behavior accompanied by an inability to recall important personal information that is too extensive to be explained by ordinary forgetfulness. Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. (DSM IV at p. 477.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                           - 8 -

in 2005 refer to alters called Mama Liss, Lara, Nicole, Heidi, Dad, and Melissa-Marie (Tr. 204-210). On June 2, 2005, plaintiff reported she hears voices once a month or less (Tr. 224).

Some 2006 records refer to "alters." Plaintiff reports she is "Missy"; she also refers to "Lara" and "Mama Liss" (February 22 and 23, 2006 at Tr. 200-202; March 2, 2006 at Tr. 199). About three weeks later, on March 20, 2006, there is no indication of dissociating (Tr. 197). Then, about a month later, on April 27, 2006, plaintiff reports an "alter" came out to do housework (Tr. 195). On June 15, 2006, Ms. Mosher reports she is not "splitting," and not hearing voices (Tr. 192). On November 1, 2006, plaintiff is not dissociating (Tr. 182).

Records in 2007 are similar. On March 14, 2007, plaintiff mentions "alters" (Tr. 177). Then, about a month later, on April 19, 2007, Ms. Mosher says she is dissociating but cannot recall it; "alters warned her" (Tr. 175). Next, in September 2007, Mr. Dobler reminded plaintiff she did not dissociate when taking abilify (Tr. 284), a medication stopped during pregnancy and nursing.

Finally, in May 2008, plaintiff tells Mr. Dobler she has not "heard many voices at all" (Tr. 268), hears no voices (Tr. 275), and feels she is doing "quite well now" (Tr. 274).

Terry Patterson, ARNP, and later Melissa Allman, ARNP, saw plaintiff roughly once a month for medication management, from May 2005 through August 2009 (Tr. 291-348; 399-402; 425-431). Records show symptoms improved shortly after starting psychotropic medication (Tr. 19, referring to 177-227). Patterson observes in January 2008 plaintiff's "depression is lifting since being

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                        - 9 -

changed from her pregnancy medications to the medications that she was on prior to pregnancy" (Tr. 3315). On June 3, 2008, Patterson opines plaintiff "is very healthy" (Tr. 307).

*B. Examining professionals*

Joyce Everhart, Ph.D., evaluated plaintiff on September 23, 2008 (Tr. 363-369). She reviewed Mr. Dobler's records from January to August of 2008 (Tr. 363). Dr. Everhart diagnosed, among other conditions, malingering, and a GAF of 60[7] (Tr. 368). She notes Ms. Mosher's reported auditory hallucinations since high school "appears somewhat inconsistent" with the May 2005 opinion of examining psychiatrist Thomas Rodgers, M.D., who found no evidence of hallucinations (Tr. 364, referring to Tr. 171). Dr. Everhart observes plaintiff's currently reported PTSD symptoms also appears inconsistent with the 2008 progress notes from treatment providers at Family Services of Spokane. On May 28, 2008, nurse practitioner Patterson opined plaintiff is "[s]table on medications. Post traumatic stress disorder well controlled" (Tr. 308).

John Arnold, Ph.D, evaluated plaintiff on September 16, 2009 (Tr. 432-444). Ms. Mosher was in a car accident at age sixteen, lost consciousness for several hours, and "almost died" (Tr. 433). He diagnosed PTSD (delayed onset), major depression (recurrent, moderate), and avoidant personality disorder (NOS). Dr. Arnold made rule out diagnoses of somatoform disorder and borderline intellectual functioning, and opined plaintiff's current GAF is 56, indicating moderate symptoms or limitations (Tr. 435). He assessed two severe, six marked, and five moderate limitations (Tr. 440-441).

---

[7]A GAF of 60 indicates moderate symptoms or limitations.

*C. Credibility*

To aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found her less than fully credible, a finding she does not challenge on appeal. Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Dr. Everhart diagnosed malingering based on test results. Even if this diagnosis is discredited, the ALJ gave clear and convincing reasons for her credibility assessment. She relied, in part, on activities inconsistent with claimed severe impairment,

1   complaints unsupported by objective medical evidence, and

2   inconsistent statements when she found Ms. Mosher less than

3   completely credible (Tr. 19-21).

4         The record supports the ALJ's reasons.

5         *Activities*. During the relevant period of May 12, 2005,

6   through March 5, 2010, the ALJ notes plaintiff's activities have

7   included laundry, cooking, driving, shopping, traveling to

8   California, and caring for "young children without any particular

9   assistance" (Tr. 19-21, Exhibit 3F/47, 4F/51). It is well-

10  established that the nature of daily activities may be considered

11  when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th

12  Cir. 1989). Activities such as caring for young children may

13  undermine claims of disabling impairment. *See Rollins v.*

14  *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

15        *Lack of objective medical evidence*. The ALJ notes plaintiff's

16  treatment records contradict her testimony. As noted, symptoms

17  improved shortly after plaintiff started treatment and medication

18  (Tr. 19, relying on Exhibit 3F/5-51,60). Plaintiff stopped taking

19  prescribed psychotropic medications in June 2006 due to pregnancy

20  (Tr. 20; Exhibit 3F/20). After she restarted medication, in March

21  2008 Ms. Mosher admitted her mood was better (Tr. 20, Exhibit

22  4F/45). As noted in May 2008 she is described as stable on

23  medication. PTSD symptoms are well controlled (Tr. 20; Exhibit

24  5F/18-19). In July 2008, plaintiff denied any psychosis (Tr. 20,

25  Exhibit 5F/16).

26        Although an ALJ may not reject a claimant's subjective

27  complaints based solely on the lack of medical evidence, it is a

28  factor the ALJ can consider. *Burch v. Barnhart*, 400 F.3d 676, 680

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                        - 12 -

(9th Cir. 2005), citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991). The ALJ relied on more than the lack of objective evidence when he assessed credibility. Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony. *See Carmickle v. Soc. Sec. Admin.*, 533 F.3d 11 55, 1162 (9th Cir. 2008), *citing Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)(citations omitted).

*Inconsistent statements*. The ALJ observes plaintiff reports she is afraid to drive, yet admitted "she drives her partner around in search of prospective jobs" (Tr. 19; Exhibit 3E). Plaintiff told Dr. Arnold she nearly died after a car accident at age sixteen; told Dr. Rodgers she was not even hospitalized, and told providers at Family Services of Spokane she was hospitalized for two days and it was believed she was going to die (Tr. 21; *compare* Exhibit 16F/2 *with* 2F/1 and *with* 4F/6). Inconsistencies either in a claimant's testimony or between her testimony and her conduct supports a decision by the ALJ that a claimant lacks credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

The ALJ's reasons for finding plaintiff less than fully credible are clear, convincing, and fully supported by the record. *See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002) (extent of daily activities is properly considered). Although the evidence supports more than one rational interpretation, the Court

may not substitute its judgment for that of the Commissioner where, as here, proper legal standards were applied in weighing the evidence and making the decision. *See Rollins,* 261 F.3d at 857, citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ gave specific and legitimate reasons supported by substantial evidence for discounting Mr. Dobler's contradicted opinion. *See Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). First, Mr. Dobler's opinions are internally inconsistent. He opined plaintiff's GAF was 20 in May 2005, 30 in September and November 2005, 35 in March and May 2006, and 50 in November 2006 and 2007. Despite these assessed severe limitations or symptoms, Mr. Dobler's contemporaneous chart notes repeatedly describe plaintiff as demonstrating a good affect, relaxed, and showing logical and progressive thought processes (Tr. 21-22). *See e.g.*, Tr. 271 (affect good, alert); Tr. 274 (mood good and stable); and Tr. 173 (good grooming, hygiene and affect; thoughts logical and progressive).

Next, the ALJ notes Mr. Dobler is not an acceptable medical source (Tr. 22). She is correct. See 20 C.F.R. §§ 404.1513 and 416.913. Mr. Dobler appears to base his opinions largely on plaintiff's unreliable self-report. His opinions are conclusory, Finally, assessed severe functional limitations are inconsistent with her daily activities. Each is a specific, legitimate reason supported by substantial evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(affirming ALJ's decision to discount opinions of treating physicians because rendered on a checklist form, lacked supportive objective evidence, was contradicted by other statements and assessments of

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 14 -

the claimant's medical condition, and was based on claimant's unreliable subjective descriptions of pain).

The ALJ rejected Dr. Arnold's opinion because it also appears based at least in part on plaintiff's unreliable reporting. The assessed severe and marked limitations contrast "sharply with other substantial evidence of record," including plaintiff's ability to consistently care for young children without help. The ALJ stated she considered the reason Dr. Arnold made his report (at counsel's request in support of plaintiff's claim for benefits, rather than to obtain treatment)(Tr. 22), error if any is clearly harmless since the remaining reasons are specific, legitimate and supported by the record. The error is inconsequential to the ultimate nondisability determination. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405 (g).

After review the Court finds no harmful error in the ALJ's decision.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and

1  supported by substantial evidence..

2       **IT IS ORDERED:**

3       1. Defendant's Motion for Summary Judgment **(Ct. Rec. 23)** is

4  **GRANTED.**

5       2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15)** is

6  **DENIED.**

7       The District Court Executive is directed to file this Order,

8  provide copies to counsel for Plaintiff and Defendant, enter

9  judgment in favor of Defendant, and **CLOSE** this file.

10      DATED this 12th day of July, 2011.

11                                    s/ James P. Hutton
                                 JAMES P. HUTTON
12                        UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                        - 16 -